## 30578. YELLOW CAB COMPANY *v.* ADAMS.

DECIDED JULY 14, 1944.

*Douglas, Evans & Cole, Samuel D. Hewlett,* for plaintiff in error.
*George & John L. Westmoreland,* contra.

SUTTON, P. J.  Hoyle E. Adams sued Yellow Cab Company of Atlanta for damages for personal injuries.  His petition as amended alleged substantially as follows: That about 7:30 a. m., on October 5, 1942, while driving a horse-drawn milk wagon in a northerly direction on Juniper Street at a point about half way between Eighth and Tenth Streets, a taxicab of the defendant company ran into the rear of his wagon, practically demolishing it, and seriously, severely, and permanently injuring him; that Juniper Street at the point of the collision is approximately 30 feet wide, and there was approximately 18 to 20 feet unobstructed on the west side of the wagon, and 8 to 10 feet on the east side in which the taxicab driver could have operated without hitting the wagon; that the milk wagon and the taxicab were proceeding in the same direction; that the plaintiff was traveling at a speed of three to four miles an hour, and the taxicab at a speed of approximately 50 to 55 miles per hour, in violation of the State law and two specified city ordinances; that the driver was not keeping a lookout in the direction in which he was traveling; that his vision was defective, he having no vision in one eye, which condition was evident to anyone observing him, and was known to the officers and agents of the defendant employing him; that he did not have the taxicab under proper control at the time and place in question, and failed to turn to the left to avoid striking the plaintiff's wagon, although there was sufficient space for him to have done so, and that he also failed to apply brakes to stop the taxicab; that the plaintiff's injuries consisted of a compound comminuted fracture of the middle third left femur, fractures of the sixth, seventh, and eighth ribs on his left side; lacerations of forehead, eyebrow, left hand, muscles, ligaments, and tendons in his entire body, particularly in the chest; back and left leg were bruised and strained; the car-

tilage in his left knee joint was torn loose, and there was a rupture of the capsule of the knee joint, causing a leak in the synovial fluid; and as a result of the injury, a narrowing of the knee joint, preventing his bending it, and that he had permanently lost the use of his knee to the extent of 75%, and was unable to bear weight upon his left leg; that there was an absorption of the lower end of the left femur, and atrophy of the muscles and tendons around the joint—all of which injuries incapacitate him for performing his usual and ordinary work to the extent of 50% for the remainder of his life; that he has been incapable of performing any work to the date of filing suit, December 15, 1942; that his nervous system received a permanent shock, and that he is suffering from traumatic neurasthenia; that he was confined to a hospital for approximately two weeks; that it was necessary to employ a physician to treat him and to perform an operation upon his left leg; to apply a brace to the bones of his leg, and to place his body in a cast; that he has remained at home since that time; that he has been totally incapacitated for doing any work since the injuries, and will be incapacitated for a period of one year, and will be under the care and treatment of a doctor for that time; that the injuries are permanent, and the disability to his left leg will remain permanently so, and his earning capacity will be reduced 50% by reason thereof; that the hospital bill was approximately $107; that he has and will incur a doctor's bill of approximately $700; that he was 50 years old, strong and able-bodied, and was earning approximately $30 a week at the time of his injuries, and had an expectancy of 21.11 years. He sued for damages for pain and suffering, past, present, and future, loss of earnings, diminished capacity to labor and earn money, and for doctors', nurses', and hospital bills. The defendant filed an answer and denied liability.

On the trial, the plaintiff testified that he was 51 years of age, and was working seven days a week, earning $30 weekly as a milk-wagon driver at the time he was injured, and had not lost a day in thirteen years up to that time; that on the morning of the accident he was traveling north on Juniper Street, about half way between Eighth and Tenth Streets, his horse walking along passing some cars parked on the right-hand curb; that he saw a taxicab more than a block away approaching at about 45 miles per hour; that

he was standing on the running board of the wagon, going in the same direction as the taxicab; that he remarked to himself, "He might hit me—I will just step off the running board up in the wagon;" that he proceeded to step off the running board into the milk wagon, and did not turn his horse in either direction, and did not see the driver of the taxicab turn to the right or left; that the driver did not give any signal; that the taxicab hit the rear end of the wagon, knocking him through the floor board and under the wagon, and piling on him milk bottles, which cut him, and he was for the time being rendered unconscious; that the horse was knocked down, and the wagon knocked around; that subsequently he was taken to the hospital, and in two or three days was operated on by his physician, and remained there eleven days, and was confined to his room four months; that he continues to suffer pain and his leg feels like it is going to burst open, and he has had to have his leg dressed three times a week; that he can not bend his left knee "but just a little bit," and his left leg is now larger than his right one; that he does not sleep at night, and frequently does not lie down at night; that the operating physician X-rayed him, and put in a plate to hold the bones together, and after some time the plate was removed; that pus ran out of the leg previous to the removal of the plate; that he is unable to do any work, and unable to do the work he had been doing; that he had not made a dime since he was hurt.

On cross-examination he stated the taxicab hit the wagon behind, tearing off the left fender of the taxicab, and did not hit the left front side of the wagon at all; that the wagon contained about 100 gallons of milk, which fell against the door of the wagon and caved in the door on the left side. He denied that the wagon was headed west towards the driveway. He further stated that a negro and someone else took the wagon off of him.

James Stewart, a witness for the plaintiff, testified that on the morning of the accident he was about four feet from the corner of Juniper and Eighth Streets, and that, while he did not see the accident occur, he was pouring water in his own car when the taxicab ran by his car, and came within a foot of hitting his own car; that there was no traffic going south on Juniper Street; that the wagon was being driven close to the curb on the right-hand side, and was going straight down Juniper Street when it was hit; that

in his opinion the taxicab was going between 35 and 40 miles an hour; that after the collision the taxicab went beyond the wagon; that he together with another colored man and two white persons pulled the plaintiff out of the wagon; that no cars were parked on the left-hand side of the street.

Charlie Walton testified that he did not actually see the accident happen, but he heard the crash, and after the collision the dairy wagon was on the right-hand side of the street headed towards Tenth Street, two or three feet from the curb; that before the collision no other traffic was on Juniper Street going in the opposite direction, and while two cars were parked on the right-hand side of the street, no cars were on the left side; that "there was all the room they wanted between the side of the wagon and the left side of the curb in the direction the plaintiff and the cab was going, and that two cars could have traveled there without touching each other;" that he was about 20 or 30 feet away coming up to the sidewalk when the collision occurred.

Dr. Martin T. Myers, a witness for the plaintiff, testified that he was an orthopedic surgeon of seventeen years experience; that he had treated the plaintiff constantly since his injuries; that the fracture of the left knee joint was a compound comminuted fracture; that the plaintiff is unable to bend his knee; that he is not able to remain on his leg for any length of time; that in his opinion on account of the instability of the knee, the plaintiff will have a 75% disability.

Dr. Randolph Smith, an expert medical witness for the defendant, testified that he examined the plaintiff on October 5, 1942, and that the plaintiff's primary cause seemed to be a simple, short, spiral fracture of the thigh bone, and, according to his testimony, sharply disagreed as to the treatment of the plaintiff by his physician for the leg injury; he discussed at length the X-ray pictures introduced in evidence; that while the knee cap showed marked signs of atrophy, that, in his opinion, would not be a permanent condition, but with the use of the leg, the atrophied condition would clear up. On cross-examination, after examining the plaintiff's knee during the trial, he stated it was his opinion that the plaintiff "has about 15 degrees of motion in his knee, and should have well over 90 degrees; that the plaintiff should have as a minimum 120 to 140 [degrees], but has only about 15 degrees."

There was also other medical testimony to the effect that the plaintiff had about 15% normal use of the injured knee.

Joe Steed, a civil engineer and assistant county surveyor, testified for the defendant that the width of Juniper Street from curb to curb was 40 feet.

Mrs. Fred Rhinehardt, a witness for the defendant company, testified she was the sole passenger in the taxicab at the time of the accident; that she was about asleep just prior thereto, and that when the taxicab slowed down and the driver applied the brakes, she looked up to see the milk wagon in front; that she did not know whether the milk wagon was moving or standing still; that when she opened her eyes the driver was trying to avoid hitting the wagon; that she was unable to estimate the speed of the cab.

F. A. Barnes, the driver of the taxicab at the time of the accident, testified that he was going out Juniper Street and before reaching the intersection of Eighth Street, he saw the milk wagon doubly parked on the street; that, as he approached, another car was coming in the opposite direction, and he slowed down to allow the other car to go through; that the street was narrow and cars were parked on both sides; that there was not sufficient room for him to pass between them, and as he made a left turn to go around, the wagon started up, making a sharp turn, without previously giving any signal, and he was in the act of passing the wagon when the collision occurred by the right fender of the taxicab hitting the left rear side of the wagon; that after the car going south had passed there was plenty of room to pass before the wagon started up, and if the wagon had not cut to the left, there would have been plenty of room. He denied any trouble in seeing objects, and stated that his eyes had been examined since and previous to the accident. On cross-examination he stated he saw the wagon probably 100 or 150 yards before he got to it; that he was not over 15 or 20 feet from the wagon when it started moving and got in front of him and blocked his path; that both sides of Juniper Street were filled with parked cars, and there was no way for him to go around the wagon; that when he saw the wagon pull out, he cut his taxicab to the left and tried to miss the wagon but did not; that he was unable to say what kept him from hitting the horse, or where he hit the wagon; that he put on his brakes before he hit it, and the other car proceeded by, and he (the taxicab driver) "speeded up a bit" in going by.

Dr. Frank Eskridge, a witness for the defendant, testified that on September 15, 1943, he made an examination of the plaintiff. He discussed at length the different phases of the X-ray pictures introduced by both the plaintiff and the defendant. On cross-examination he stated that the plaintiff "had about 15% normal flexion in his knee."

The jury returned a verdict in favor of the plaintiff for $10,-000. The defendant made a motion for a new trial, which was overruled, and the exception here is to that judgment.

■ The defendant in error made a motion to dismiss the writ of error on the ground: "That the bill of exceptions filed in this case fails to name or designate any plaintiff in error or defendant in error, and it does not appear from the face of the pleadings who are the parties thereto." The motion to dismiss is without merit, as it is manifest from the recitals in the bill of exceptions who is the plaintiff in error and who is the defendant in error, and under the rulings made in *Joiner* v. *Singletary,* 106 *Ga.* 257 (32 S. E. 90) ; *Gunby* v. *Turner,* 194 *Ga.* 378 (21 S. E. 2d, 640) ; and *Bankers Health & Life Ins. Co.* v. *North,* 68 *Ga. App.* 677 (23 S. E. 2d, 449), this is sufficient to withstand a motion to dismiss upon the ground here made. Furthermore, upon the call of the case in this court, the plaintiff in error tendered an amendment to the bill of exceptions by specifically naming itself, Yellow Cab Company of Atlanta, plaintiff in error, and Hoyle E. Adams defendant in error. The amendment is allowed; and the motion to dismiss is denied. Code, §§ 6-1402, 6-1309.

■ Under the evidence, the jury was authorized to find that the plaintiff was injured through the negligence of an employee of the defendant in the operation of one of its taxicabs on Juniper Street in the City of Atlanta, as alleged in the petition. The substance of the evidence is set out above, and it will not be necessary to repeat it here; but it is sufficient to say that the jury was authorized to find that the plaintiff, a driver of a milk wagon, while using his wagon to deliver milk on Juniper Street in Atlanta, was negligently run into and severely injured by one of the defendant's taxicabs. His left leg was broken above the knee, his knee was badly injured, causing a 75% disability in the use of that leg; three of his ribs were fractured, and he sustained other painful injuries; he was an able-bodied man at the time he was injured, 51

years of age, and was receiving $30 per week. He sued to recover damages for pain and suffering, loss of wages and decreased earning capacity, and doctors', nurses', and hospital bills occasioned by said injuries. The verdict for $10,000 returned by the jury was amply authorized by the evidence; and it was not excessive, as is contended by the plaintiff in error in special ground 13 of the motion for new trial.

■ It is contended by special grounds 4 and 10 of the motion that the court erred in failing to give in charge the following timely written requests: (4) "If you believe from the evidence in this case that the negligence of the plaintiff is greater than the negligence of the defendant, then the plaintiff can not recover in this case;" (10) "If you believe from the evidence in this case that the negligence of the defendant is less than the negligence of the plaintiff, then the plaintiff can not recover in this case."

In substance these two requests are one and the same, and will be so treated. The plaintiff in error contends that the principle of law contained in these requests was not given in charge to the jury by the court, nor was this principle substantially covered in the charge given by the court. The defendant cab company contended that the plaintiff's injuries were caused by his own negligence, in that he turned or allowed the horse to turn the wagon in Juniper Street in front of the taxicab without giving the driver of the taxicab any sign or warning. With respect to this contention as to whose negligence was responsible for the collision between the taxicab and the milk wagon which caused the injuries to the plaintiff, and as to when there could and could not be a recovery by the plaintiff, the judge charged the jury as follows: "I charge you that the Yellow Cab Company contends that the proximate cause of the injuries to the plaintiff was plaintiff's turning his wagon in Juniper Street, or in allowing the horse to turn the wagon in Juniper Street, without extending his arm in warning to defendant's driver before he attempted to turn the wagon he was driving, or permitting the horse to turn the wagon he was driving. The plaintiff denies the contentions there made by the defendant. Gentlemen, an operator intending to start, to stop, or to turn his vehicle to the left or right shall extend his hand and arm horizontally from and beyond the left side of the vehicle. Gentlemen, if you believe from the evidence in this case that the defendant's cab driver was negligent

in some particular prior to the collision, but that the proximate cause of the collision was the turning of the wagon in the street, and the plaintiff in doing so, failed to exercise such care as a prudent person would do to avoid injury to himself, then the plaintiff could not recover in this case. Gentlemen, I charge you that if you believe the defendant was negligent, and that such negligence was the proximate cause of the plaintiff's injuries, then in that event, the plaintiff would be entitled to recover in this case. If you find that the defendant was not negligent, or if you find that the defendant was negligent, but that such negligence was not the proximate cause of plaintiff's injuries; or if you find that plaintiff was negligent and his negligence was the proximate cause of his own injuries; or if you find that both the plaintiff and the defendant were negligent, and equally so, then and in that event, you would find for the defendant in the case."

It will be seen that the court instructed the jury that the plaintiff would be entitled to recover if they believed the defendant was negligent, and that its negligence was the proximate cause of the plaintiff's injuries. He then told the jury that if the defendant was not negligent, or if they found that the defendant was negligent, but that such negligence was not the proximate cause of the plaintiff's injuries, or if they found that the plaintiff was negligent and his negligence was the proximate cause of his own injuries, or if they found that the plaintiff and the defendant were both negligent, and equally so, then in any of these events they would find for the defendant.

We think the principle of law contained in the requests to charge set out in grounds 4 and 10 of the motion was substantially covered by the charge of the court just-above quoted. From an application of the facts based on the defense as contended for by the defendant, the court plainly told the jury that if the defendant was negligent, but such negligence was not the proximate cause of the plaintiff's injuries, the plaintiff could not recover; or if the plaintiff was negligent, and his negligence was the proximate cause of his own injuries, he could not recover; and he then told the jury, if they found that both the plaintiff and the defendant were negligent and equally so, there could be no recovery by the plaintiff. From this charge, it seems to us the court made it plain to the jury that the plaintiff could not recover if his injuries were

caused by his own negligence, which would necessarily mean that his negligence in that respect was greater than the negligence of the defendant in so far as the injuries sustained by him were concerned; and it would also mean that the negligence of the defendant in that respect was less than the negligence of the plaintiff. The court in this charge told the jury that if they found that both the plaintiff and the defendant were negligent and equally so, the plaintiff could not recover. Of course this meant, and there is no reason for the jury to have understood it otherwise, that if the plaintiff and the defendant were equally to blame for the accident complained of, the plaintiff could not recover. This charge was more favorable to the defendant than the one requested, the one requested being, if the plaintiff was more negligent than the defendant, then the plaintiff could not recover. One of the first cases in Georgia dealing with the principle now contained in our comparative-negligence rule is that of *Macon & Western Railroad Co.* v. *Winn*, 19 *Ga.* 440. It appears that Mrs. Winn and her four children were traveling on a public highway in a carriage driven by a negro servant and that the carriage was struck by a train on the railroad crossing, resulting in the death of three of the children and the negro driver, and with serious injuries to Mrs. Winn and the other child. In that case it is said; "The train is approaching a crossing at the ordinary speed; the whistle is sounded; the driver of the carriage hearing the signal, makes a momentary halt; it is seen by Mr. Snow, the engineer; he reasonably concludes that the intention is to wait till he passes; and under that impression, he drives ahead without attempting to take up or check the train; the quicker the transit, the shorter the detention of the travelers. In the meantime, however, the negro, contrary to the orders of his mistress, determines that he can pass ahead of the train, and pushes forward accordingly. He gets on the track, but the mules, paralyzed by fear, or for some other cause, obstinately refuse to proceed, and the direful calamity detailed in the record is the consequence." In the course of the opinion, it is said: "Here are two roads crossing each other, the railroad and the public highway. The company have the exclusive right to use the railroad; every citizen has a right, in common, to travel the highway; each sees the other advancing, neither will stop, and a collision ensues; who is to blame? Common sense says both; and

the law, in conformity with common sense, declares, that if both parties are equally in the wrong, neither can or ought to maintain an action against the other." And again quoting from the opinion: "Our conclusion then is, that if both parties are equally at fault, or neither are guilty, there can be no action; and that the right to sue lies between these two hypotheses. The innocent sufferer is always entitled to redress, as a matter of course, taking the term innocent in its broadest meaning. He who is most negligent, can never ask a court for compensation; he who is least so, may or may not, according to the facts and circumstances of the case." "No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent or is caused by his own negligence. If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of fault attributable to him." Code, § 94-703. "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In some cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained." § 105-603. These two code sections embody the Georgia rule of comparative negligence and apportionment of damages, and are codifications of the rules in respect to this doctrine adopted by our Supreme Court in the *Winn* case, supra, and in other decisions by that court rendered prior to the enactment of the Code of 1861.

It is quite proper, where the facts of a case authorize it, for the court to instruct the jury that the plaintiff can not recover, if his negligence is equal to or greater than the defendant's negligence. This principle has been stated in numerous decisions of the Supreme Court and this court. But the question here to be decided is whether it was harmful error for the court to fail to give these two requests in the exact language requested. We do not think it can reasonably be said that the defendant was in the least harmed by the failure to give these requests. From the charge given, the jury could take the facts and determine whether the defendant was negligent, and if so, whether its negligence was responsible for the injuries to the plaintiff; or they could determine whether the plaintiff's own negligence was responsible for

his injuries; or they could determine whether they were both at fault and equally so; and they were instructed for which party they could find in any of these events. We have carefully considered the cases cited by the plaintiff in error; but we are of the opinion that under the facts of the present case and the charge given, no harmful error is shown by grounds 4 and 10 of the motion for new trial.

■ Special grounds 5, 6, 7, and 8 of the motion complain that the court failed to give in charge to the jury the written requests therein set out, viz: the definition of gross negligence, and then instructions based on the contention of the defendant that the plaintiff was guilty of gross negligence. These requests were not adjusted to the facts, nor applicable under the facts of this case, and it was not error for the court to fail to give them in charge to the jury. Under the facts of the present case, ordinary care was the degree of care to be exercised by both the driver of the taxicab and the plaintiff, and the court properly charged the jury with respect to ordinary care and diligence, and that both the plaintiff and the defendant were charged with the duty and obligation to exercise such care.

■ The failure of the court to give the written request as complained of in ground 9 of the motion is without merit, as the court in his charge instructed the jury almost word for word in the language contained in that request.

■ In ground 11, it is contended that the court erred in failing to charge the jury substantially as follows: "That, under the law of this State, no plaintiff can recover against the defendant when his negligence equals or exceeds that of the defendant." We think this principle of law was substantially covered under the charge of the court set out in division 3 of this opinion, and therefore no error is shown by this ground of the motion.

■ It is contended in special ground 14 that the court erred in not declaring a mistrial, on motion of defendant's attorney, when the attorney for the plaintiff in the concluding argument to the jury stated to the jury "that the defendant would be delighted for the jury to give as little as $7500." It appears that the motion to declare a mistrial was argued out of the presence of the jury, and when the jury returned to the jury box, the court instructed them as follows: "Gentlemen of the jury: In the course

of the argument counsel for the plaintiff used substantially these words, to which counsel for the defendant made objection, 'That the defendant would be delighted for the jury to give as little as $7500.' The court, upon consideration of the motion, has concluded that the use of those words was improper by counsel in argument, and those words are stricken from the argument, and the jury is instructed to completely disregard each of those words."

It is stated in this ground of the motion that counsel for the defendant objected to the statement made to the jury by the plaintiff's attorney on the ground that the same was immaterial and irrelevant and highly prejudicial to the defendant; that it not alone suggested to the jury that the plaintiff should have a verdict for more than $7500, but was suggestive that a compromise, or settlement had been offered for such an amount and had been declined by the plaintiff. It is also contended that the court did not reprimand or rebuke counsel for the plaintiff, and that the mild instruction given by the court to the jury did not remove from their minds the impression created by that part of the argument objected to.

This was a suit for damages for personal injuries in the sum of $20,000. The evidence showed that the plaintiff had sustained serious and permanent personal injuries, that he had suffered pain, past and present, and would continue to suffer in the future, that he had sustained a loss of his wages, that his earning capacity had been decreased as much as 50%, and he had been put to considerable expenses in the way of doctors', nurses', and hospital bills. We are aware of the rule that the introduction of facts can not be brought into a case by argument of counsel, but it is well settled that counsel can comment on the facts as disclosed by the evidence and draw legitimate conclusions therefrom. If the statement of counsel, which was objected to, was at all improper, this was removed by the court when he struck the statement from the argument and instructed the jury to completely disregard it. The trial judge necessarily has a discretion on such a motion, and unless it appears that there was an abuse of such discretion his ruling should not be disturbed. We have considered the cases cited by the plaintiff in error in support of this ground of the motion, but we are of the opinion that they do not require a different ruling here from that which is being made. Each case stands on its own par-

ticular facts. In support of the ruling now being made, see *Manchester* v. *State,* 171 *Ga.* 127 (7) (155 S. E. 11); *White* v. *State,* 177 *Ga.* 115, 125 (5) (169 S. E. 499); *Powell* v. *State,* 179 *Ga.* 401, 411 (4) (176 S. E. 29); *Hyde* v. *State,* 196 *Ga.* 475 (7) (26 S. E. 2d, 744); *Hicks* v. *Slate,* 196 *Ga.* 671 (2) (27 S. E. 2d, 307). No harmful error is shown by this ground of the motion.

The court did not err in overruling the defendant's motion for a new trial.

*Judgment affirmed. Felton and Parker, JJ., concur.*